AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

FILED
Aug 18 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

United States of America
v.

ANDREW LEDESMA

*Defendant(s)*

Case No. CR 26-71096-MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of AUgust 15, 2026 in the county of Monterey in the Northern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2422(b) | Attempted coercion and enticement of a minor to engage in criminal sexual conduct<br><br>PENALTIES: Mandatory imprisonment of 10 years to life; mandatory supervised release term of 5 years to life; maximum $250,000 fine; mandatory special assessment of $5,100 ($100 special assessment under 18 U.S.C. § 3013 and $5,000 special assessment under 18 U.S.C. § 3014(a)(3)); potential restitution and forfeiture. |

This criminal complaint is based on these facts:

See attached affidavit of HSI Special Agent Davis Mendelsohn.

☑ Continued on the attached sheet.

/s/ Davis Mendelsohn w/permission
*Complainant's signature*

HSI SA Davis Mendelsohn
*Printed name and title*

Approved as to form ___/s__________
AUSA _Katie Griffin_________

Sworn to before me by telephone.

Date: August 17, 2026

Susan van Keulen
*Judge's signature*

City and state: San Jose, California

Hon. Susan van Keulen, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Davis Mendelsohn, being duly sworn, state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Andrew LEDESMA with one count of using or attempting to use a means of interstate commerce to persuade, induce, entice, or coerce a minor to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422(b), on or about August 15, 2026.

2. This affidavit is intended to show there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts in this affidavit are based on my personal observations, my training and experience, records and reports, and information provided to me by other law enforcement officials and witnesses. All times in this affidavit are approximate.

## AFFIANT BACKGROUND

3. I have been a special agent (SA) with Homeland Security Investigations (HSI), an investigative component of the United States Department of Homeland Security (DHS), since January 2019. I am temporarily assigned to HSI's Child Exploitation Investigations Unit at DHS's Cyber Crimes Center (C3) in Fairfax, Virginia. However, my permanent assignment is with HSI's Office of the Resident Agent in Charge in Monterey, California. As part of my daily duties, I investigate violations of federal laws related to the sexual exploitation of children. Prior to my employment with HSI, beginning in June 2016, I was a sworn investigator with the California Department of Motor Vehicles (DMV). While employed with the DMV, I conducted investigations related to a variety of criminal and administrative offenses.

4. Throughout my law enforcement career, I have received training on conducting criminal investigations as well as searches and seizures. In 2017, I completed a 24-week-long basic police academy in California, and in 2019, I completed the Criminal Investigator Training Program and HSI Special Agent Training program, a total of 26 weeks of training, at the Federal Law Enforcement Training Center in Brunswick, Georgia. Since becoming a federal law enforcement officer, I have written probable cause affidavits in support of multiple federal search warrants and criminal complaints for cases involving the sexual exploitation of children.

5. Further, in April 2022, I attended a week-long training, hosted by the Silicon Valley Internet Crimes Against Children Task Force, on acting in an undercover capacity on the internet to investigate child exploitation offenses. Additionally, in April 2024, I attended a four-day training provided by HSI on the same subject matter. Both trainings covered undercover communications with targets of child exploitation investigations. I have led and participated in multiple investigations during which I acted in an undercover capacity on the internet to investigate child exploitation offenses.

## APPLICABLE STATUTES

6. This investigation concerns an alleged violation of Title 18, United States Code, Section 2422(b), which states: "Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

## FACTS SUPPORTING PROBABLE CAUSE

SUMMARY

7. On August 14, 2026, while acting in an undercover capacity as a sex trafficker, I posted an advertisement on an online website known for promoting commercial sex services. The advertisement contained images of what appeared to be two young females. The following day, when Andrew LEDESMA responded to the advertisement, I told him the females featured in the advertisement were 12 and 13 years old. LEDESMA arranged to pay $200 to have sex with the purported children, then traveled to the planned meeting location in Monterey County, California, a county within the Northern District of California. Upon arriving at the meeting location, LEDESMA met with an undercover law enforcement officer and exchanged $200 cash for a room key to the hotel room where he believed the 12-year-old and 13-year-old girls were waiting.

THE INITIAL ADVERTISEMENT

8. On August 14, 2026,[1] while acting in an undercover capacity, I posted an advertisement on a website used to promote commercial sex services (hereinafter “Website A”). The advertisement indicated the poster was in the area of Monterey, California, and other cities in the general area. The advertisement also contained images of what appeared to be two young females,[2] listed their ages as “99,” and included a phone number monitored by me. The title of the advertisement read: “Tight, Young, and Ready to Jump On Your Stick Shift!! 🏎️ 🏎️.” One activity

[1] On both August 14, 2026, and August 15, 2026, I reposted the advertisement on Website A multiple times. In the reposts, I did not change anything in the advertisement.

[2] The individuals featured in the advertisement’s images were portrayed to LEDESMA as 12-year-old and 13-year-old girls, but in reality, were adult employees of a law enforcement agency. In the images in the advertisement, the two individuals had their faces blocked with emojis, which are small digital images/icons.

listed under the "ACTIVITIES THIS FEMALE ESCORT MAY ENJOY" section of the advertisement was "Intercourse – Vaginal (FS[3])." The body of the post contained the following text:

> In town for Car Week fun, cum get us while we here!! 😘 😘
>
> 2 pretty lil race cars ready to be filled up 🏎️ 🏎️
>
> ask about Car Week specials and a double discount
>
> NO BULLSHIT 🚫
>
> NO COPS 🚫
>
> 100% independent ✅
>
> Txt [phone number redacted]

9. Based on my training and experience, I know Website A is known for promoting commercial sex (despite its advertised use being for connecting consenting adults for non-commercial purposes and/or with commercial escorts). While Website A requires users to be at least 18 years old, users have advertised commercial sex acts with both adults and children. Therefore, I targeted the advertisement I posted on Website A toward individuals interested in paying for sex with children. More specifically, the word "cum," along with "NO COPS," indicates to the reader that sex is being advertised for sale. Additionally, the phrases "tight" and "young" – in conjunction with the photos described herein – indicate to the reader that the sex being advertised might be with young girls.

<u>UNDERCOVER COMMUNICATIONS WITH LEDESMA (PHONE NUMBER 1)</u>

10. On August 15, 2026, at approximately 1:34 PM, an individual later identified as Andrew LEDESMA texted me at the phone number listed in the advertisement I posted on Website

[3] Based on my training and experience, I believe that "FS," in the context of human trafficking investigations, means "full service" and refers to sexual intercourse, including penetrative sex.

A, "How much for a hhr incall[4][.]" LEDESMA sent this message from a specific phone number (hereinafter "Phone Number 1"). A short time later, I responded, "I got two girls, so depends if jus one or both. They younger. U ok with that?" LEDESMA replied, "Just 1. And how old?" I then stated, "[Name 1] is 12yo and [Name 2] is 13yo." I added, "I keep them safe though."

11. At approximately 1:30 PM, LEDESMA responded, "Thats a lot younger than I was expecting you to say." In response, I said, "Lol yeah it's not for everyone so I like to jus get it out there," and LEDESMA replied, "Bit hesitant to ask. But how much for 1?" Beginning at approximately 1:32 PM, LEDESMA ("AL" in the following transcripts) and I ("UC" in the following transcripts) exchanged the following messages:

**UC:** Hhr for the 12yo is $150. 13yo is $125

**UC:** Hhr for both is $200

**AL:** Huh. Which ones which in the pics you have on the ad? If you don't mind me asking

**UC:** That's fine

**UC:** Maroon pants is the 12yo. Jeans is the 13yo

**AL:** Hmm I guess ill try both then.

12. At approximately 1:38 PM, LEDESMA stated he would be available at about 6:00 PM. I then responded, "That should be fine. U want full service?" LEDESMA replied, "Sure." I then stated, "Ok that's fine. Just make sure u bring condoms for vag sex," and LEDESMA said, "Alright," then asked where to meet me and the girls. I explained I would just meet LEDESMA in the hotel room, take the cash, and "leave [him] to it." I then added, "Jus don't hurt them. Can't be too rough ya know?" LEDESMA acknowledged, "Understandable."

13. At approximately 1:45 PM, I asked LEDESMA if I could just text him around 6:00 PM, then added, "And ur sure ur good with this? Not trying to pressure u lol. We have plenty of

[4] Based on my training and experience, in the context of human trafficking investigations, I believe "hhr" means half hour and that "incall" is when a customer comes to a sex worker's location.

customers so no worries if not." LEDESMA replied, "6 is fine. And I mean this is really freaking weird to be honest. But im willing to try anything at least once." I responded, "Ok. And for sure man. It's more common than u think though."

14. At approximately 4:21 PM, I told LEDESMA what specific city we were in, and LEDESMA said he could get there around 6:20 PM. LEDESMA asked where specifically he should go, and I instructed him to go to a local business and told him it was about five minutes away from the hotel.

15. At approximately 6:02 PM, LEDESMA stated he was on his way and that he would advise when he arrived at the aforementioned business. LEDESMA said he was "about 31" minutes away. About 20 minutes later, LEDESMA sent me a screenshot of a map listing his estimated time of arrival as 6:51 PM. Just over 20 minutes later, LEDESMA sent me another screenshot of a map listing his estimated time of arrival as 6:50 PM.

16. At approximately 6:48 PM, I asked LEDESMA, "U have condoms right?" LEDESMA stated, "Yes." I then provided LEDESMA with the address and name of the hotel and directions on where he should park. LEDESMA asked me if it was possible for me and the two girls to meet him downstairs. I responded that the girls would not be leaving the room.

<u>LEDESMA'S INITIAL ARRIVAL TO THE HOTEL</u>

17. At approximately 7:02 PM, LEDESMA messaged me, "Im here, but this still feels weird." I then told LEDESMA I could "come out," and he said he was in a "Great [*sic*] nissan." Around this time, surveillance units observed an individual later identified as LEDESMA park a black pickup truck in the hotel parking lot, exit the truck, and smoke a cigarette. An undercover law enforcement officer (hereinafter "UC-2") then approached LEDESMA and asked if he was "here for [Name 2]," and LEDESMA said he was not. The undercover law enforcement officer walked away, and shortly later, LEDESMA reentered the pickup truck and drove it out of the hotel parking

lot and out of sight. LEDESMA sent his last message – explaining he could see a specific vehicle in the hotel's parking lot – to me from Phone Number 1 at approximately 7:06 PM.

UNDERCOVER COMMUNICATIONS WITH LEDESMA (PHONE NUMBER 2)

18. On August 15, 2026, at approximately 7:15 PM, an individual later identified as LEDESMA used a different phone number (hereinafter "Phone Number 2") to message me, "How much for a half hour?" I responded, "I got two girls. They younger," then asked if that was ok. LEDESMA replied, "That should be fine?" A short time later, I stated, "[Name 2] is 13yo and [Name 1] is 12yo. Just like to be up front." LEDESMA said the offer sounded "very sketch."

19. At approximately 7:29 PM, LEDESMA asked for a picture of the inside of the hotel room, explaining that would help convince him I was not "an undercover cop or something." About 15 minutes later, LEDESMA stated he was "sketched out, because that is super young." After I stated it was "sketch" for me, too, LEDESMA asked where he should meet me and how much it would be for "both." I asked LEDESMA what services he wanted and for how long, and he replied, "Fs? And hhr." When I asked LEDESMA whether he wanted those services "with both of them," LEDESMA stated, "Why not." I then told LEDESMA, "Fs hhr for both of them is $200," and LEDESMA responded, "Ok."

20. At approximately 7:57 PM, LEDESMA stated he had cash and condoms. I then asked LEDESMA, "Ok u planning on anal or only vag?" When LEDESMA said he did not know, I told him it was up to him and that I just wanted to let "them" (the two girls) know, and LEDESMA replied, "Probably both?" I then messaged LEDESMA, "Ok. Bj without condom is fine but vag and anal need condom."

21. At approximately 8:02 PM, I provided LEDESMA with the name and address of the hotel. LEDESMA advised me, "Oh I was there a while ago having a smoke after work ok." I asked LEDESMA if I talked with him earlier, and he replied, "You were the guy with all black who asked

about [Name 2]?" After I told LEDESMA I was, he stated, "Thats fucking funny and I just pulled in, gonna have a smoke real fast."

FACE-TO-FACE MEET WITH AND ARREST OF LEDESMA

22. At approximately 8:08 PM, UC-2 reapproached LEDESMA in the hotel's parking lot. During the face-to-face interaction, LEDESMA provided UC-2 with $200 cash and showed UC-2 condoms. UC-2 then gave LEDESMA a hotel room key and told LEDESMA the room number in which the girls were waiting.

23. LEDESMA then approached the room, which was on the second floor. As LEDESMA was in front of the room's door, investigators placed him under arrest without incident. During a search incident to arrest, investigators located condoms and a cell phone in LEDESMA's pockets. When I called Phone Number 1, I did not observe any notifications on LEDESMA's phone. However, when I called Phone Number 2, I observed a notification from TextNow listing a missed call from my phone number. TextNow is an application that uses the internet to facilitate communication, including text messaging, between its users and others.

24. Investigators identified LEDESMA by a California driver's license found in his wallet. His name, matching photo, and identifiers were confirmed via records obtained from the California Department of Motor Vehicles.

INTERVIEW OF LEDESMA

25. At approximately 8:46 PM, another HSI agent and I interviewed LEDESMA at a government office near the hotel. At the beginning of the interview and before asking LEDESMA questions related to this investigation, I read LEDESMA the *Miranda* advisement from HSI's "Statement of Rights" form. LEDESMA stated he did not have any questions about the advisement. This section of the affidavit summarizes specific portions of the interview.

26. LEDESMA provided his phone number as one different than Phone Number 1 and Phone Number 2. When asked for his understanding of what happened, LEDESMA replied, "Made a call, came to meet somebody, and got arrested." LEDESMA said he was there to meet "two girls" and that he intended to call the police after seeing the girls to get "whoever was trafficking them arrested." When I asked LEDESMA to confirm that his plan was to "save" the girls, he replied, "In a way, yeah, cause it seems so fucked up to have two young girls that young doing this, especially out here."

27. I asked LEDESMA how old the girls were, and he stated, "I think he [the purported trafficker] said 13 and 12." Throughout the interview, LEDESMA reiterated he planned to contact the police after confirming the girls were in the hotel room. When asked why he did not call the police before attempting to meet the purported trafficker, LEDESMA stated he did not think it through and became "lost in the anger" about the "underaged girls." LEDESMA said he did not tell anyone else about his plans. LEDESMA admitted multiple times his story was not believable.

28. LEDESMA stated he originally contacted the purported trafficker by messaging him "off of" Website A. LEDESMA described Website A as an "escort site." LEDESMA stated he uses Website A "ever so rarely," but "not for something, like, this young." LEDESMA added, "Usually an Asian escort or something." LEDESMA estimated he was last on Website A to look for an "escort" about a month and a half ago.

29. LEDESMA said he used TextNow to communicate with the purported trafficker. LEDESMA stated the purported trafficker "said to bring condoms" and that he brought the condoms to show the purported trafficker that he (LEDESMA) was "serious." LEDESMA said he uses TextNow "once in awhile for, like, an Asian escort or something."

30. LEDESMA stated he first contacted the purported trafficker after 7:00 PM. LEDESMA stated that, before 7:00 PM and prior to contacting the purported trafficker, he stopped

at the hotel to smoke. Based on my knowledge of this investigation, I believe this was the point when UC-2 initially encountered LEDESMA in the hotel's parking lot. LEDESMA claimed that stopping at the hotel earlier was a complete coincidence.

31. During the interview, LEDESMA allowed me to look through certain portions of his phone.[5] In the TextNow application, I located the messages between Phone Number 2 and me while I was acting as the trafficker. In the photos on LEDESMA's phone, I located the two map screenshots LEDESMA sent to me from Phone Number 1. After this, LEDESMA admitted to using Phone Number 1 before Phone Number 2.

32. After admitting to using Phone Number 1, LEDESMA stated he initially saw the advertisement on Website A at about noon or 1:00 PM and that he arrived at the hotel the first time at around 6:50 PM. LEDESMA stated Phone Number 1 was also a TextNow phone number and that he changed the TextNow phone number to Phone Number 2 because something felt "off" about his initial interaction with UC-2. LEDESMA said UC-2 asked him, "Are you here to see [Name 2]?" LEDESMA stated he "freaked out" because UC-2 looked like "a fucking crackhead." LEDESMA said he told UC-2 "no," then "took off" after finishing his cigarette.

33. LEDESMA said he began to drive home and that, when he got to Castroville, he decided to go back to the hotel. LEDESMA stated he changed his phone number on TextNow, then again contacted the purported trafficker using the new phone number (Phone Number 2).

34. LEDESMA said he purchased the condoms after the purported trafficker told him to bring condoms. LEDESMA stated he did not think the purported trafficker would allow him to "do anything" if he (LEDESMA) did not have condoms. LEDESMA stated he withdrew the $200 cash he gave to UC-2 "right after work."

[5] Later in the interview, LEDESMA signed a consent form authorizing investigators to search his cell phone.

35. LEDESMA also stated he has Telegram, an encrypted messaging application, on his phone. LEDESMA said he was in a group on Telegram dedicated to animated pictures of children engaging in sexual conduct, including infants and toddlers. LEDESMA stated he has reported the group multiple times.

**CONCLUSION**

36. Based on my knowledge, training, experience, and the facts set forth in this affidavit, I respectfully submit there is probable cause to believe Andrew LEDESMA violated Title 18, United States Code, Section 2422(b), while in Monterey County, California, on August 15, 2026. Therefore, I request that the court issue a criminal complaint and an accompanying arrest warrant for LEDESMA.

37. I swear the foregoing is true and correct to the best of my knowledge, information, and belief.

/s/ Davis Mendelsohn w/permission
DAVIS MENDELSOHN
Special Agent
Homeland Security Investigations

Sworn to before me over the telephone and signed by me pursuant to FED. R. CRIM. P. 4.1 and 4(d) on this 17th day of August 2026.

HON. SUSAN VAN KEULEN
United States Magistrate Judge